IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

INTERNATIONAL PAINTERS AND                :
ALLIED TRADES INDUSTRY PENSION
FUND, et al.                              :

    v.                                     :   Civil Action No. DKC 18-3656

                                          :
ARCHITECTURAL METAL & GLASS
SOLUTIONS LIMITED LIABILITY               :
COMPANY d/b/a Architectural
Metal & Glass Solutions, et al.           :

**MEMORANDUM OPINION**

Plaintiffs initiated this action against Architectural Metal & Glass Solutions LLC ("AMGS") pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA") on November 29, 2018. (ECF No. 1). Plaintiffs filed an amended complaint on February 21, 2019, adding Architectural Glass Works AGW LLC ("AGW") as a defendant. Presently pending is Plaintiffs' motion for default judgment. (ECF No. 17). The relevant issues have been briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the motion will be granted in part.

I.   **Background**

The following facts are alleged in the amended complaint. (ECF No. 7). The Plaintiffs are employee benefit plans that were established and are maintained according to the provisions of restated agreements, declarations of trust, and a collective

bargaining agreement with one or more local labor unions or district councils affiliated with the International Union of Painters and Allied Trades, AFL-CIO, CLC (the locals, district councils, and International being referred to jointly as the "Union") and AMGS. Plaintiff International Painters and Allied Trades Industry Pension Fund and Plaintiff Tim D. Maitland, in his capacity as fiduciary, together are authorized collection fiduciaries for the International Painters and Allied Trades Industry Annuity Plan ("Annuity"), the Finishing Trades Institute ("FTI"), the Painters and Allied Trades Labor Management Cooperation Initiative ("LMCI"), and the Political Action Together Fund ("PAT"). The collective bargaining agreement between the District Council 711 International Union of Painters and Allied Trades and Glaziers Local Union 1009 and AMGS requires AMGS to make contributions to Plaintiffs for each hour worked by covered employees.

Defendant AMGS is a New Jersey limited liability company and an employer in an industry affecting commerce within the meaning of 29 U.S.C. §§ 152(2), (6) and (7), 1002(5), (11) and (12) who did business with Plaintiffs. Based upon publicly available information, AMGS has ceased operations. Defendant AGW together with AMGS is a New Jersey limited liability company and allegedly an alter ego or successor of AMGS. (ECF No. 7 ¶ 17). Plaintiffs

allege that Defendants comprise a single employer, or successor with respect to the audit at issue.

Plaintiffs and AMGS entered into a settlement agreement on July 6, 2017, after AMGS was found to owe Plaintiffs $18,729.81 arising from a payroll compliance review for the period January 1, 2013, through August 31, 2015. Under the terms of the parties' agreement, AMGS would pay 24 monthly installments of $936.55 representing $879.55 principal, one percent interest per month, and a $57 processing charge. Payments were to begin August 1, 2017. To secure payment under the agreement, Anjennette Panebianco, as owner of AMGS, was to execute a promissory note attached as Exhibit 2 to the parties' agreement. Although the settlement agreement between the parties was ratified, the promissory note attached to the agreement was not.

Plaintiffs commenced this action on November 29, 2018, alleging that AMGS defaulted on the terms of the settlement by failing to make the June, July, August, and September, 2018 payments. Plaintiffs sent default notices but AMGS failed to cure those defaults. Plaintiffs seek (1) a determination that Defendant AGW is an alter ego or successor of AMGS and (2) judgments against both Defendants, jointly and severally, for the unpaid balance of the Settlement Agreement, interest, liquidated damages, attorneys' fees, and costs. Plaintiffs also seek additional amounts allegedly due under the Labor Contracts, Trust Agreements, and Plan from

3

January 2013 through August 2015 in the amount of $16,771.88 (Count II = $8,257.07 and Count III = $8,514.81).

Both Defendants were served on April 17, 2019 and both failed to respond within the requisite time period. Plaintiffs filed a motion for the entry of default on June 12, 2019, (ECF No. 12), and the clerk entered default on August 14, 2019, (ECF No. 13).

**II. Standard of Review**

Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Where a default has been previously entered by the clerk, the court may enter a default judgment upon the plaintiff's application and notice to the defaulting party, pursuant to Fed.R.Civ.P. 55(b)(2). A defendant's default does not automatically entitle the plaintiff to the entry of a default judgment; rather, that decision is left to the discretion of the court. *See Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001). The Fourth Circuit has a "strong policy" that "cases be decided on their merits," *Dow v. Jones*, 232 F.Supp.2d 491, 494 (D.Md. 2002) (citing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)), but default judgment may be appropriate where a party is unresponsive, *see S.E.C. v. Lawbaugh*, 359 F.Supp.2d 418, 421 (D.Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).

"Upon [entry of] default, the well-pled allegations in a complaint as to liability are taken as true, but the allegations as to damages are not." *Lawbaugh*, 359 F.Supp.2d at 422. Federal Rule of Civil Procedure 54(c) limits the types of judgments that may be entered based on a party's default: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Thus, where a complaint specifies the amount of damages sought, the plaintiff is limited to the entry of a default judgment in that amount. "[C]ourts have generally held that a default judgment cannot award additional damages . . . because the defendant could not reasonably have expected that his damages would exceed that amount." *In re Genesys Data Technologies, Inc.*, 204 F.3d 124, 132 (4th Cir. 2000).

### III. Analysis

#### A. Alter Ego

Judge Coulson recently reiterated the purpose and test for imposing joint and several liability on defendants:

> The alter ego doctrine "was developed to 'prevent employers from evading their obligations under labor laws and collective bargaining agreements through the device of making a mere technical change' in the structure or identity of the employing entity . . . without substantial change in its ownership or management." *Md. Elec. Indus. Health Fund v. Kodiak Util. Constst., Inc.*, 289 F.Supp.2d 698, 701-02 (D.Md. 2003)(*quoting Mass. Carpenters Cent. Collection Agency v. Belmont Concrete Corp.*, 139 F.3d 304, 308 (1st Cir. 1998).

5

> In this Circuit, there is a two-part test to assess alter ego status. *Heating, Piping & Refrigeration Pension Fund v. Conditioned Air Systems, Inc.*, 2014 WL 1290639, at *4 (D.Md. March 28, 2014)(*citing Alkire v. NLRB*, 716 F.2d 1014, 1019-20 (4th Cir. 1983)). First, the Court must determine "whether substantially the same entity controls both the old and new employer." *Alkire*, 716 F.2d at 1020. In making this inquiry, courts evaluate a variety of factors including: "continuity of ownership, similarity of the two companies in relation to management, business purpose, operation, equipment, customers, supervision, and anti-union animus. *Id*. If this step is satisfied (as the two entities are substantially the same) the court proceeds to assess "whether the transfer resulted in an expected or reasonably foreseeable benefit to the old employer related to the elimination of its labor obligations." *Id*. In essence, a court must decide "whether a successor corporation is really the predecessor corporation by another name," and the ultimate question in determining single employer status is whether the two entities are in an arm's length relationship. *Conditioned Air*, 2014 WL 1290639, at *4.

*International Painters & Allied Trades Industry Pension Fund*, ELH 18-CV-02333, Report and Recommendation, November 15, 2019, 2019 WL 6044197, adopted by Judge Hollander, December 10, 2019.

Plaintiffs argue that AMGS and AGW are alter egos and/or constitute a single employer because they:

    a. have the same registered agent, owner, officers, and management;

    b. have identical business purposes with substantially identical operations;

6

  c. Anjennette Panebianco was or is the agent, owner or co-owner of AMGS and AGW;

  d. have employees who performed covered work as defined by the Labor Contract;

  e. share the same customers;

  f. redirect callers to their respective telephone numbers to the voicemail box associated with the phone of Anjenette Panebianco;

  g. the registered address of AGW is the home address of the common owner; and

  h. acted as a single integrated enterprise with no arm's length relationship between them.

Here, AMGS entered into a settlement agreement with Plaintiffs after a payroll compliance audit found a debt owed for the period January 2, 2013, through August 31, 2015. Anjennette Panebianco, as owner of AMGS, signed the settlement agreement in exchange for Plaintiffs' forbearance from executing on a confessed judgment note. AMGS made ten (10) payments toward its debt before defaulting. Plaintiffs had no knowledge of the existence of Defendant AGW until it attempted service of its original complaint. (ECF No. 17, Exhibit 7).

Plaintiffs aver that Anjennette Panebianco is the owner or co-owner of both AMGS and AGW. When business operations are transferred and the same entity controls both the former and new

7

employer, the court must determine if the transfer resulted in a benefit to the former employer with regard to the elimination of its labor obligations. *Alkire,* 76 F.2d at 1020. In other words, did the change result in a "bona fide discontinuance and a true change of ownership," or merely a "disguised continuance of the old employer." *Southport Petroleum Co. v. NLRB*, 315 U.S. 100, 106 (1942). Non-payment of the debt owed under the parties' settlement agreement is a benefit that was reasonably foreseeable to Anjennette Panebianco. Thus, the judgment will be entered against both defendants, jointly and severally.

**B. Damages**

Assuming the truth of the well-pleaded allegations contained in the amended complaint, as the court must upon the entry of default, Plaintiffs have established Defendants' liability for breach of the settlement agreement.

With respect to damages, Plaintiffs' amended complaint seeks (1) a monetary judgment; (2) the court's determination that AGW is a successor to AMGS; and (3) the court's determination that AGW is bound to the terms and conditions of the labor contract and jointly and severally liable to Plaintiffs. Count I of Plaintiffs' amended complaint seeks an award in the amount of $19,418.76 for breach of the settlement agreement. Count II seek an additional award of $8,257.07 under ERISA and Count III seeks $8,514.81 under the Labor Contract for delinquent contributions from January, 2013 through

August, 2015.  Plaintiffs also request the imposition of interest, liquidated damages, attorneys' fees, and costs.

In support of the damages sought stemming from the breach, Plaintiffs submit the declaration of Michael O'Malley, Delinquency Manager of the International Union of Painters and Allied Trades Industry Pension Fund.  (ECF No. 17-3).  Mr. O'Malley attests to the facts set forth in the amended complaint demonstrating AMGS' breach of the settlement agreement and provides a breakdown of the sums sought for the breach, interest through 11/25/19, liquidated damages, attorney fees, and costs.  O'Malley provided a chart showing a breakdown of the amount purportedly owed beginning with an amount owed to each Plaintiff totaling $12,734.33 then assessing interest calculated pursuant to the fluctuating IRS interest rate of $3,056.41, liquidated damages of $3,056.41 at twenty-percent (20%) through November 25, 2019, and audit costs of $1,012.24.  Finally, the chart reflects AMGS' payment of $9,440 and a total owed of $10,419.39.

The amortization schedule appended to the parties' settlement agreement indicates that the balance owed on the debt after receipt of the last payment, May 2017, is $10,672.20.  Under the terms of the parties' Agreement, the amount recoverable in the event of a breach is the total debt less payments made to the date of default plus interest.  Plaintiffs are entitled to a default judgment in that amount.

Plaintiffs will not be awarded judgment for delinquent contributions requested in Counts II and III for the period from January, 2013 through August, 2015, even if sought in the alternative. *See, International Painters & Allied Trades Industry Pension Fund*, 2019 WL 6044197, *5.

Plaintiffs are entitled to recover reasonable costs incurred in this action pursuant to Fed.R.Civ.P. 55(b). The parties' Agreement recites that "the Funds also shall be entitled to recover all reasonable attorneys' fees and costs and related collection costs it incurs as a result of a breach of this Agreement . . ." The declaration of attorney Maureen W. Marra suggests fees and costs of $22,081.99. (ECF No. 17-9). Ms. Marra states that, although counsel normally command a higher hourly rate, a special fee of $375 per hour for attorneys and $120 per hour for paralegals and clerks was negotiated with Plaintiffs. Time and expense details supporting the request break down costs of $873.49 and fees of $21,209 after reduction of amounts already included in the parties' Agreement. (ECF No. 17-10).

Counsel was recently advised, by virtue of the Report and Recommendation of Magistrate Judge Coulson, adopted without objection by Judge Hollander, that their methodology for justifying an attorneys' fee award was unacceptable. Counsel are directed to recalculate and substantiate any amount requested in

line with Judge Coulson's opinion. *Finch Industrial Coatings, LLC*, 2019 WL  at 6044197, at *6-8.

### IV. Conclusion

For the foregoing reasons, Plaintiffs' motion for default judgment will be granted in part and denied in part. Before a final award can be entered, a revised request for attorneys' fees must be submitted. After the court has an opportunity to review the revised request, a final judgment will be entered. A separate Order will follow.

                                                      /s/
DEBORAH K. CHASANOW
United States District Judge