IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

INTERNATIONAL PAINTERS AND      :
ALLIED TRADES INDUSTRY PENSION
FUND, et al.                    :

    v.                          :   Civil Action No. DKC 18-3656

                                     :

ARCHITECTURAL METAL & GLASS
SOLUTIONS LIMITED LIABILITY     :
COMPANY d/b/a Architectural
Metal & Glass Solutions, et al. :

**MEMORANDUM OPINION**

Presently pending is Plaintiffs' Second Supplement to their Brief in Support of Plaintiffs' Motion for Judgment by Default Pursuant to Federal Rule of Civil Procedure 55(b)(2), (ECF No. 23), as directed by this Court's Order dated May 19, 2020 ("Order") (ECF No. 22).

As the name of Plaintiffs' paper suggests, this is the second time Plaintiffs have been asked to file a supplement with this court to justify and substantiate their request for attorneys' fees.  In the memorandum opinion preceding the first order, the court stated the following:

> Counsel was recently advised, by virtue of the Report and Recommendation of Magistrate Judge Coulson, adopted without objection by Judge Hollander, that their methodology for justifying an attorneys' fee award was unacceptable.  Counsel are directed to recalculate and substantiate any amount requested in line with Judge Coulson's opinion.  [*Int'l Painters & Allied Trades Indus. Pension Fund v. Finch Indus. Coatings*

> *LLC*, No. 18-CV-02333-ELH, 2019 WL 6044197, at
> *6-8 (D. Md. Nov. 15, 2019)].

(ECF No. 18, at 10-11).

Plaintiff subsequently filed their first supplement, (ECF No. 20), which the court rejected as a flawed effort to remedy their methodology "in line with Judge Coulson's opinion."  The court summarized those flaws as follows:

> Plaintiffs' counsel has merely reduced the billing rate of two attorneys by $25 an hour. (ECF No. 20, at 2).  In his *Finch Indus. Coatings* opinion, Judge Coulson did not so much take issue with the top billing rate of Plaintiff's counsel as he did with "why so many hours were expended on a case which, eventually, was resolved on a Default Judgment[.]" *Finch Indus. Coatings LLC*, No. 18-CV-02333-ELH, 2019 WL 6044197, at *8. . . This court shares Judge Coulson's concerns regarding the total number of hours billed to a relatively simple matter.

(ECF No. 22).  The court further characterized the instant case as "highly similar" to the underlying litigation in *Finch*.  (*Id.*). The court sought "further justification" for Plaintiffs' sought-after recovery of 74.1 hours in attorneys' fees amounting to $22,081.99.  (*Id.*).

Plaintiffs have now attempted, again, to provide that justification.  Plaintiffs have differentiated this case from that of *Finch* by noting 1) the not-insignificant amount of hours spent prior to the commencement litigation, and 2) the additional time required in this case due to the original defendant's,

2

Architectural Metal & Glass's ("AMG"), cessation of operations and resumption under a new name, Architectural Glass Works ("AGW"). (ECF No. 23, at 3).

As to the latter issue, Plaintiffs' counsel now claims that:

> Upon receiving new information about AMG and AGW, Plaintiffs' counsel accordingly expended additional time investigating AGW, conducting legal research, and preparing an amended complaint to include an alter ego claim, all of which is accounted for in the itemization of billed time provided to the Court in Exhibit 8 to Plaintiffs' Motion. In turn, the addition of the alter ego claim increased the time spent by counsel and staff to prepare the Motion for Judgment by Default, memorandum, and exhibits.

(*Id.*). Plaintiffs filed their initial complaint on November 29, 2018, and their amended complaint on February 21, 2019. Plaintiffs' counsel's billing records indicate that in between those dates, they devoted roughly 14.8 hours to matters relating to the amendment of the complaint.

As to the former issue, the court does not take issue with the hours billed prior to the commencement of litigation. The Settlement Agreement provided for recovery of the costs of collection. That said, Judge Coulson's opinion in *Finch* stressed the need to eliminate "excessive and duplicative charges," as well as time spent on work which "bore no fruit." *Finch Indus. Coatings LLC*, No. 18-CV-02333-ELH, 2019 WL 6044197, at *9. Three instances

of such work seem to occur in the itemized bills Plaintiffs'
counsel have submitted.

First, Maureen W. Marra appears to have spent five hours on
work related to the drafting of a complaint in August 2017.
Specifically, the bills note that Ms. Marra spent 1.3 hours on the
"preparation of complaint," on August 24, 2.6 hours on "legal
research" and "preparation of complaint" on August 30, and another
1.1 hours on complaint related matters on August 31st. (ECF No.
17-10, at 2). Plaintiffs' counsel obviously did not file any
complaint until November 29, 2018 – 15 months after Ms. Marra's
initial work on the complaint. There is then a considerable gap
between initial complaint work, and the resumption of litigation-
related work in October of 2018. In October and November of 2018,
Ms. Marra spent another 4.5 hours preparing the complaint, while
Dominique B.E. Ward billed 4.6 hours, and Judith A. Snytzer billed
.3 hours in preparing the complaint during the same, later time
span. Ms. Marra, Mr. Ward, and Ms. Snytzer all initially billed
out at $375. (*Id.*). As best the court can tell from Plaintiffs'
counsel's bills, Plaintiffs' counsel devoted a total of 14.4 hours
to the preparation and drafting of the initial complaint. More
than a third of those hours were billed over a year prior to the
filing of any complaint. Without any explanation for these earlier
complaint-related hours, the court takes the position that they
qualify as "excessive and duplicative." These charges appear all

4

the more excessive and duplicative in light of the fact that Plaintiffs' counsel claims to have spent more time – 14.8 hours – amending their complaint than they did preparing the original complaint.

Second, and perhaps even more alarming, Plaintiffs' counsel's bills indicate that they billed 18.6 hours in preparing their Motion for Default.  That motion is a near carbon copy of the motion Plaintiffs' counsel submitted in *Finch*.  While factual details differ, long sections of the two briefs are word for word copies.  Indeed, Section IV of Plaintiffs' counsel's motion for default, which runs from pages eight to 21, is lifted *entirely* from the motion for default submitted in *Finch.*  Section V of the same memorandum is also lifted, word for word, from Plaintiffs' counsel's brief in *Finch*.  The only difference is that in the instant case, Plaintiffs' counsel inserted a single sentence on "Audit Costs" which did not apply in *Finch*.  And, of course, Plaintiffs were unsuccessful on those claims.

For those keeping score, this would indicate that Plaintiffs' counsel spent virtually no time at all – literally, the time required to copy and paste from one document to another – on 17 of the 26 pages of their memorandum in support of their motion for judgment by default.  The rest of the two briefs are not carbon copies, but they do plainly rely on much the same research.

Third, to return to the drafting and amending of the complaint: Plaintiffs' counsel clearly relied on legal research previously used in *Finch*, including legal research regarding alter ego analysis, which also arose in *Finch*.  In Plaintiffs' counsel's Second Supplemental, they stress that time spent amending the complaint was justified because "[u]pon receiving new information about AMG and AGW, Plaintiffs' counsel accordingly expended additional time investigating AGW, conducting legal research, and preparing an amended complaint to include an alter ego claim[.]" (ECF No. 23, at 3).  While Plaintiffs' counsel was justified in expending "additional time investigating AGW," it is not clear that Plaintiffs' counsel utilized much in the way of new legal research considering the similarity of the alter ego claims in this case and in *Finch*.

It is impossible, using only the papers Plaintiffs' counsel has submitted to this court, to entirely reconstruct the work they did on this case.  But the fact remains that on a similar matter, Judge Coulson noted that even after slashing much of Plaintiffs' counsels' billable hours, their hours and fees were still "on the high end of the fees and costs awarded in similar cases in this district." *Finch Indus. Coatings LLC*, No. 18-CV-02333-ELH, 2019 WL 6044197, at *10.

Plaintiffs' counsel has now been offered three opportunities to cure defects in their request for attorney's fees.  They were

likewise provided an opportunity to cure similar defects in *Finch*, which, the court noted, "they failed to do[.]" *Finch Indus. Coatings LLC*, No. 18-CV-02333-ELH, 2019 WL 6044197, at *7. Under the circumstances, a reasonable percentage reduction will be applied, as "practical means of trimming fat from a fee application." *Kirsch v. Fleet Street, Ltd.*, 148 F.3d. 149, 173 (2d Cir. 1998) (citing *New York Association for Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)).

Accordingly, the amount of fees awarded will be reduced by slightly more than 50%, to $10,000. A separate order will be entered.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
